```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF INDIANA
                    TERRE HAUTE DIVISION
```

NICHOLAS SUDING,                          )
                                          )
        Petitioner,                   )
                                          )
        vs.                           )   No. 2:15-cv-00218-WTL-DKL
                                          )
SUPERINTENDENT Correctional Industrial    )
Complex,                                  )
        Respondent.                   )

**Entry Discussing Petition for Writ of Habeas
Corpus and Denying Certificate of Appealability**

For the reasons explained in this Entry, the petition of Nicholas Suding a writ of habeas corpus must be **denied** and the action will be dismissed with prejudice. In addition, the court finds that a certificate of appealability should not issue.

### I. The Petition for Writ of Habeas Corpus

#### A. Background

In the present case, Nicholas Suding seeks a writ of habeas corpus with respect to his conviction in an Indiana state court. His custodian, on behalf of the State of Indiana, argues that review of Suding's claims is barred by procedural default. Suding opposes this argument.

Suding was convicted in 2010 of three counts of Class A felony conspiracy to commit murder. His conviction was affirmed in *Suding v. State*, 945 N.E.2d 731 (Ind.Ct.App. 2011) (*Suding I*). The trial court's denial of Suding's petition for post-conviction relief was affirmed in *Suding v. State,* 2014 WL 5094346 (Ind.Ct.App. Oct. 10, 2014)(*Suding II*). The Indiana Supreme Court denied Suding's petition for transfer in *Suding II* on April 2, 2015. The facts pertinent to Suding's offenses were summarized in Suding's direct appeal:

>	In February 2009, Suding's wife, Renee, became concerned about Suding's anger toward Tamara Scott, his ex-wife and mother of his daughter, S.S. Suding purchased devices to open locks and Renee heard him talking about entering Scott's house to stab her. At a June 2009 hearing, the trial court entered an order protecting Scott and S.S. from Suding. After the hearing Renee heard Suding talk about killing Scott, her lawyer, and the judge who presided over the protective order hearing.
>
>	In July 2009, Suding took Renee to various locations in Illinois and Kentucky that could serve as hideouts after the murders. Around that same time, Suding sold his rifle and bought two handguns. He told Renee he bought the weapons at a flea market because weapons purchased there could not be traced to him. After purchasing the handguns, Suding made two-liter bottles into silencers. In late July 2009, Suding instructed Renee to follow the judge and Scott's attorney to determine what cars they drove, where they lived, and where they parked.
>
>	On July 28, Renee reported Suding's activities to the Hendricks County Sheriff's Department. Detective Roger Call gave Renee a recording device and she recorded a conversation during which Suding discussed how he would blow up the judge's house with propane, what would happen after he killed Scott, and the order and manner in which he would kill his victims. Suding was arrested and the State ultimately charged him with six counts of Class A felony conspiracy to commit murder. A jury found Suding guilty of three counts. The court sentenced him to forty years imprisonment, with five years suspended for each count, to be served concurrently.

*Suding I,* 945 N.E.2d at 734–35.

Suding raised three issues in his direct appeal: 1) the charging information was improperly amended; 2) evidence of prior bad acts were improperly admitted; and 3) the trial court improperly denied his motion for a direct verdict. In *Suding II,* the post-conviction appeal, Suding argued that: 1) the post-conviction court committed various procedural errors; 2) the State failed to turn over exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963); 3) his trial counsel was ineffective for failing to raise an alibi defense, failing to assert his marital privilege for communications with his wife, failing to seek suppression of evidence obtained as a result of a search warrant, and failing to more thoroughly challenge his wife's credibility; 4) his trial counsel had a conflict of interest; 5) and his appellate counsel was ineffective for failing to raise the *Brady* claim on direct appeal.

After these claims were rejected, Suding sought transfer to the Indiana Supreme Court, arguing that: 1) there were various procedural errors in the post-conviction proceedings; and 2) his was entitled to assert the marital privilege. The Indiana Supreme Court denied transfer on April 2, 2015.

The filing of the present action followed on July 20, 2015. Suding's habeas claims are those presented in *Suding II*. The claim regarding the marital spouse privilege, however, is wrapped in the cloak of ineffective assistance of counsel. The record has been expanded to include the records on appeal in both *Suding I* and *Suding II*

### B. Habeas Framework

"[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters,* 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). The scope of the Great Writ is limited because a viable habeas claim pursuant to § 2254(a) necessarily precludes a claim which is not based on alleged noncompliance with federal law. *See Wilson v. Corcoran,* 562 U.S. 1, 4 (2010) ("But it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").

"Federal habeas corpus happens to be one of the most complex areas of American law." *Holmes v. Buss*, 506 F.3d 576, 579 (7th Cir. 2007). It is therefore no surprise that "when examining a habeas corpus petition, the first duty of a district court . . . is to examine the procedural status of the cause of action." *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1132 (7th Cir. 1990).

"It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. Claims not so raised are

considered defaulted." *Breard v. Greene,* 523 U.S. 371, 375 (1998) (citing *Wainwright v. Sykes,* 433 U.S. 72 (1977)); *see also Woodford v. Ngo,* 548 U.S. 81, 92 (2006)("In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default . . . .") (internal quotation marks omitted)). "[T]he burden is on the petitioner to raise his federal claim in the state court at a time when state procedural law permits its consideration on the merits. . . ." *Bell v. Cone,* 543 U.S. 447, 451 n.3 (2005). "Fair presentment contemplates that both the operative facts and the controlling legal principles must be submitted to the state court." *Malone v. Walls,* 538 F.3d 744, 753 (7th Cir. 2008).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *See Murray v. Carrier,* 477 U.S. 478, 492 (1986); *Weddington v. Zatecky,* 721 F.3d 456, 465 (7th Cir. 2013). Prejudice means actual prejudice infecting the "entire trial with error of constitutional dimensions." *Murray,* 477 U.S. at 494 (citation omitted). A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

If procedural hurdles are not a factor with respect to specific claims or are overcome, the Antiterrorism Effective Death Penalty Act ("AEDPA") provides that federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). Also, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo,* 590 F.3d 533, 536 (7th Cir. 2010). As one court has explained, "[i]t is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone,* 967 F.Supp. 152, 156 (E.D.Va. 1997).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *Id.; Carey v. Musladin,* 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor,* 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. The petitioner must show that the state court's ruling was "so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). A state court decision is only unreasonable when it "l[ies] well outside the boundaries of permissible differences of opinion." *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002) (citation omitted). If a state court's decision "was reasonable, it cannot be disturbed." *Hardy v. Cross,* 132 S. Ct. 490, 495 (2011) (per curiam).

Finally, a habeas court presumes the factual findings of the state court to be correct, unless the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Etherly v. Davis*, 619 F.3d 654, 660 (7th Cir. 2010). On this topic, therefore, deference is also paid to the factual determinations of state courts. *Coleman v. Hardy,* 690 F.3d 811, 815 (7th Cir. 2012). Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See Rice v. Collins*, 546 U.S. 333, 338 (2006); *Miller–El v. Cockrell,* 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The factual summary quoted above from *Suding I* and other factual findings by the Indiana state courts are presumed correct. Suding has not rebutted that presumption. In addition, there is no claim in this case that decisions of the Indiana state courts were contrary to clearly established Federal law, as determined by the Supreme Court of the United States. In consequence, and

excepting for the claim which is not cognizable and the claims which are forfeited by Suding's unexcused procedural default, the burden is on Suding to show that the state court which convicted him unreasonably applied a federal doctrine declared by the United States Supreme Court." *Redmond v. Kingston,* 240 F.3d 590 ((7th Cir. Cir. 2001) (citing 28 U.S.C. Section 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362 (2000); *Morgan v. Krenke,* 232 F.3d 562 ((7th Cir. Cir. 2000)).

### C. Discussion

*Non-cognizable Claim.* Suding seeks federal habeas corpus relief based on the contention that the trial court committed various errors in the post-conviction relief proceeding. This claim, however, is not cognizable here. "To say that a petitioner's claim is not cognizable on habeas review is . . . another way of saying that his claim 'presents no federal issue at all.'" *Perruquet,* 390 F.3d at 511 (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Habeas relief cannot be predicated on alleged irregularities or errors in a state post-conviction relief proceeding. *Quince v. Crosby,* 360 F.3d 1259, 1262 (11th Cir. 2004)("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *see also Montgomery v. Meloy,* 90 F.3d 1200, 1206 (7th Cir.)("[u]nless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, . . . errors in state collateral review cannot form the basis for federal habeas corpus relief"), *cert. denied,* 519 U.S. 907 (1996); *Williams v. State,* 640 F.2d 140, 143-44 (8th Cir.) ("Infirmities in the state's post-conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction. . . . Errors or defects in the state post-conviction proceeding do not, *ipso facto,* render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings."), *cert. denied,* 451 U.S. 990 (1981).

*Defaulted Claims.* Two claims were presented to the Indiana Supreme Court in Suding's petition to transfer filed from *Suding II.* Claims asserted here but not included in the petition to transfer to the Indiana Supreme Court were not raised "in one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999), and are waived. *Hough v. Anderson,* 272 F.3d 878, 892-93 (7th Cir. 2001) (petitioner's failure to present issue to Indiana Supreme Court constituted procedural default).

From these circumstances, it is apparent that Suding has committed procedural default with respect to the habeas claims not included in his petition to transfer. His responsive argument that certain broad language in his petition to transfer was sufficient to preserve habeas claims respect to habeas claims 1(3), 1(4), 1(5), and 1(6) for review in this proceeding is unpersuasive because Indiana does not permit litigants to present argument by incorporation in petitions to transfer. *See Lockridge v. State*, 809 N.E.2d 843, 844 (Ind. 2004) ("In a Petition to Transfer, mere reference to argument and/or authorities presented in brief to [the Court of Appeals], without an explanation of the reasons why transfer should be granted, does not satisfy [Indiana Appellate] Rule 57(G)(requirements of a transfer petition)."). He has not shown cause for and prejudice from this default, and the strong evidence of his guilt negates his effort to overcome his procedural default by showing that the failure of this Court to reach the merits of his defaulted claims would result in a fundamental miscarriage of justice. The fundamental miscarriage of justice exception applies in "situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen,* 301 F.3d 758, 767 (7th Cir. 2002) (citing *Schlup v. Delo,* 513 U.S. 298, 327 (1995)). To show actual innocence, a petitioner must present "new, reliable evidence of his innocence" so convincing that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Woods v. Schwartz,*

589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup,* 513 U.S. at 329); *see Gomez v. Jaimet,* 350 F.3d 673, 679 (7th Cir. 2003) ("To support a colorable claim of actual innocence, the petitioner must come forward with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.") (internal quotation marks omitted).

Apart from his default, and even if Suding could establish circumstances justifying the Court reaching the merits of these claims, the Indiana Court of Appeals' resolution of these claims was entirely reasonable under *Strickland v. Washington,* 466 U.S. 668, 684 (1984), and *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

*Spousal Privilege Claim.* Suding seeks a writ of habeas corpus based on his claim that his attorney at trial should have prevented his wife Renee from testifying. This claim was rejected on the merits in *Suding II* and was included in Suding's petition to transfer.

The Indiana Court of Appeals recognized the controlling Supreme Court authority of *Strickland. Suding II,* at *8. "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014)(parallel citations omitted)(quoting *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694)). The Indiana Court of Appeals then assessed the specifics of this claim:

> As Suding observes, Indiana law provides for the assertion of a marital privilege. Husbands and wives "shall not be required to testify . . . as to communications made to each other." Ind.Code § 34–46–3–1(4). The privilege protects against compelled testimony, but does not bar the spouse from testifying if the spouse chooses to do so. *Glover v. State*, 836 N.E.2d 414, 422 (Ind. 2005). Renee waived the marital privilege and testified against Suding. Despite Suding's wishes to the contrary, Suding's trial attorney could not prevent Renee's testimony by pointing out that she was Suding's wife on the date of communication.

*Suding II,* at *11.

The adverse spousal testimonial privilege may be available in criminal cases when a spouse's testimony would be adverse to the non-testifying party spouse. The justification for the privilege is that it protects marital harmony, which is a good not only for the husband, wife, and children, but for society as well. *Hawkins v. United States*, 358 U.S. 74, 77 (1958). It used to be that the privilege could be invoked by either spouse, so that the non-testifying spouse could block the voluntary testimony of the other. Id. at 78–79. In *Wyatt v. United States*, 362 U.S. 525 (1960), the Supreme Court announced an exception to the privilege for cases in which one spouse has committed a crime against the other. Now, the victim spouse cannot be prevented from testifying, and can even be compelled. *Id.* at 527–30. The Supreme Court further limited the privilege in *Trammel v. United States,* 445 U.S. 40 (1980), so that now only the testifying spouse can invoke the privilege. *Id.* at 53.

Put in the terminology of *Strickland,* therefore, Suding's attorney did not perform deficiently in failing to prevent Renee's testimony because Indiana law "protects against compelled testimony, but does not bar the spouse from testifying if the spouse chooses to do so." *Suding,* at *11. An effort, or a stronger effort, for Renee's testimony to be excluded based on Suding's assertion of his marital privilege would have failed. Suding's ineffective assistance of counsel based on this specification therefore also fails because "[i]t is not deficient performance to fail to raise an argument with no real chance of success." *Hough v. Anderson,* 272 F.3d 878, 898 n.8 (7th Cir. 2001).

"Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross*, 132 S. Ct. 490, 495 (2011) (per curiam). Because the Indiana Court of Appeals' treatment of Suding's specification of ineffective assistance of counsel at trial relating to the non-assertion

of Suding's spousal testimonial privilege was reasonable, Suding is not entitled to habeas relief as to this claim.

### D. Conclusion

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). This Court has carefully reviewed the state record in light of Suding's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. One claim is not cognizable here. Several are unreviewable here because of unexcused procedural default. The other claim is completely lacking in merit. These claims do not warrant relief in light of the deferential standard required by the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 101 (2011)("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.")(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *Stern v. Meisner*, 812 F.3d 606, 610 (7th Cir. 2016)("In other words, [the habeas petitioner] must show a complete absence of reasonableness in the [state] appellate court's decision.")(citing *Harrington,* 562 U.S. at 98).

Suding's petition for a writ of habeas is therefore **denied.** Judgment consistent with this Entry shall now issue.

### II. Certificate of Appealability

Pursuant to Rule 11(a) of the *Rules Governing Section 2254 Cases*, the Court finds that Suding has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was

correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **declines** to issue a certificate of appealability.

    IT IS SO ORDERED.

Date:   12/28/16

                                                    Hon. William T. Lawrence, Judge
                                                    United States District Court
                                                    Southern District of Indiana

Distribution:

Henry A. Flores, Jr.
INDIANA ATTORNEY GENERAL
henry.flores@atg.in.gov

NICHOLAS SUDING
206734
PENDLETON - CIF
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064